*844 OPINION.
Van Eossan:
In these proceedings petitioner contends that a deduction from income in the amount of 10 per cent of the cost of ships purchased and used by it is a reasonable allowance on account of depreciation, exhaustion, wear and tear and obsolescence. Respondent has allowed 5 per cent on account of depreciation, but refuses any allowance on acoount of obsolescence.
*845 Eespondent’s allowance of 5 per cent as depreciation is based on an estimated physical life of the ships of 20 years. The evidence shows that a cargo ship built under normal conditions with normal materials and in accordance with the usual practice in the shipbuilding industry may reasonably be expected to last 20 years. The ships in this case, however, were part of the war-time program of the Shipping Board, built in an emergency shipyard under stress of War pressure when materials, labor and the quality of workmanship were notoriously inferior to normal times. The testimony of well qualified witnesses was that the physical life of the ships would not exceed 15 years. We concur in this conclusion and were we concerned only with depreciation would find respondent’s allowance therefor inadequate.
There is, however, the further question of obsolescence. Petitioner contends that shortly after the purchase of these boats, which were of blunt lines equipped with Scotch boilers and a single turbine engine, there appeared on the seas a new type of cargo ship, finer in lines, greater in speed and more economical in operation. This new type of ship was equipped either with water-tube boilers and high-pressure turbine engines or with a Diesel engine which required no boilers. The maximum speed of petitioner’s ships was 10 knots. The newer ships could make 12 or 14 knots. The oil consumption of the Scotch boilers on petitioner’s ships was 1.8 pounds of oil peí horse power per hour. The high-pressure engine with water-tube boilers used 0.8 pound of oil per horse power per hour, while the Diesel engine used only 0.4 pound per horse power per hour. The Diesel engine also effects a considerable saving in space, thereby increasing the space available for cargo. The new type of ship-propulsion machinery, though somewhat higher in original cost, was less expensive in upkeep and repair.
The effect of this pronounced improvement in the art of ship building and ship installation was positive and far-reaching. Shipping rates being equal, freight prefers the faster ship. Petitioner soon found it impossible to compete for the preferential freight and was obliged to accept less desirable freight. If rates were cut, income was reduced, while the higher operating costs of petitioner’s ships increased the disadvantage. When petitioner filed its 1920 tax return these new factors, fundamental in character, had already appeared and their future influence on shipping could readily be discerned. Petitioner’s claim for obsolescence was not based on a mere expectation that improvements in the art would probably occur. Here, the improvement had already taken place and the obsolescence of its ships was established by most convincing evidences. This distinguishes the present case from such cases as Columbia Malting *846 Co., 1 B. T. A. 999, and Benjamin Booth & Co., 4 B. T. A. 248, cited by respondent.
It was apparent to petitioner in 1921 that the day of the Robin type boat as a successful economic competitor was past. Though the ships were not rendered at once obsolete the forces which bring about economic obsolescence had been set in motion and obsolescence was occurring. The building of the improved type of boats and their infiltration into the channels of trade was a slow but steady process and their relative importance in the trade became progressively greater each year.
Yet other elements added to petitioner’s disadvantage. The influx of foreign ships released from war service into American trade, the flooding of the American market with Shipping Board vessels at sacrifice prices, the establishment by the Shipping Board of numerous trade routes, the sharpening of competition, with consequent radical reduction in ocean freight rates and the lessening in some quarters of cargo supply, were all factors that increased petitioner’s difficulty. These factors, though intangible and difficult of measurement, were nevertheless real influences that accelerated the obsolescence of petitioner’s ships. In the quickened competition of the postwar years the advantage of the fast, modern-type vessel was cumulative. Its greater speed made it more attractive to shippers, while its lower cost of operation gave a distinct money advantage to the operators.
Though income depends so much on management and various other factors beside physical or general economic life that it is not a safe or accurate standard by which to determine the fact of obsolescence, it may be examined to ascertain whether it tends to support or dispute the practical accuracy of the conclusion that such obsolescence is occurring. Looking at the record of earnings solely for this purpose, it appears that only during the first two and one-half years of the period 1920 to 1926 have petitioner’s ships made gross earnings equal to their reasonable physical depreciation computed on a basis of a 15-year life. For the four years from January 1, 1923, to December 31, 1926, the average annual gross earnings, without any deductions, are approximately $230,000. The highest amount earned in any one of these years was $304,000. If an annual depreciation charge of $325,000 be applied against these average earnings, we find an average annual loss of approximately $95,000, and this without any deduction of overhead and other proper charges.
Accurately appraising the situation in 1922 and realizing the consequence indicated therein, petitioner reasonably concluded that the economically useful life of its boats would be less than their physical life. The evidence sustains this conclusion. Petitioner was justified *847 in the belief that under the law it was entitled to an allowance for obsolescence in addition to normal physical depreciation.
The evidence convinces us that the useful economic life of the ships in question wTill not exceed 12 years from the date of purchase. Their salvage value will not exceed $20,000. The “ reasonable allowance ” for exhaustion, wear and tear, including obsolescence, should be computed on this basis.

Judgment will 5e entered under Bule 50.